IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE, CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:08-cv-02149-STA-egb |
| | ) | |
| FREDERICK WILLIAMS, incapacitated | ) | |
| by insanity, GERREN HARRISON, a | ) | |
| minor, and MACKENZIE WILLIAMS, a | ) | |
| minor, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a Report and Recommendation regarding the Joint Motion for Status and Settlement Conference filed by Frederick Williams, Gerren Harrison and Mackenzie Williams [D.E.63]. On August 17, 2010, this Court held a hearing, during which the parties' representatives presented their proposed settlement of the case and responded to inquiries from the Court. The Magistrate Judge believes that settlement is appropriate here, however, the settlement agreement that the parties propose is problematic. This Report and Recommendation sets forth a brief history of this case and the issues surrounding its settlement.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 8, 2000, after one month of marriage, Stacey Raemon Williams ("Decedent") was shot to death by her husband Frederick Williams ("Williams").[1] In May 2006, Williams was found not guilty by reason of insanity and now is confined to a facility in Bolivar, Tennessee where his mental status, according to his guardian ad litem, is periodically evaluated. The present litigation centers on Decedent's life insurance policy available through the Federal Employee's Group Life Insurance Act ("FEGLIA"). This group policy was provided by Metropolitan Life Insurance Company ("MetLife"). The value of her policy was $195,000. Because she had failed to name a beneficiary, the proceeds would have been paid to her widower, in this case to Williams, unless he was "otherwise disqualified." MetLife filed a Complaint for Interpleader on March 4, 2008 [D.E. 1], and on February 10, 2009, the Court entered an order granting MetLife's unopposed motion to pay the insurance proceeds and accrued interest into the court and to be released and dismissed from the lawsuit. On February 24, 2009, the United States District Court Clerk received $294,840.19 and, as of April 14, 2010, the amount was valued at $298,378.27. It is invested in a renewable certificate of deposit until April 14, 2011 with no penalty for early withdrawal.

The length of delay in resolving this dispute is the long-standing legal issue of whether Williams, as surviving spouse, would be "otherwise disqualified" because although he murdered her, he was determined to be not guilty by reason of insanity. The parties' attorneys declined to mediate this case in early Spring 2009 with the view that this issue was purely legal and must be decided by the Court. However, after research on the issue and after

---

[1] After shooting his wife, Williams set fire to their house and killed a Sheriff's Deputy and two Firefighters as they arrived in response to the fire.

2

weighing the uncertainties of litigation, they now have agreed to a settlement out of court and wish to present it to the District Court for approval.

THE PARTIES

Decedent's estate is in probate and being handled by Attorney Randell Brooks.  He advises that after these life insurance proceeds are disbursed, the estate will be closed. Decedent had two children—Defendants Gerren Harrison and Mackenzie Williams, each named in the MetLife lawsuit as minors, along with Defendant Williams, as incapacitated by insanity.

- Gerren Harrison is now 19 years old and emancipated for this reason.  He is a student-athlete at the College of The Cumberlands in Williamsburg, Kentucky.  His father Herman Harrison was previously married to Decedent.  Attorney Greg Krog represents Gerren Harrison and represented Herman Harrison as then-legal guardian of Gerren Harrison.[2]

- Mackenzie Williams is the minor child of Decedent and Williams. Her maternal Grandmother Gwendolyn Jones is the guardian of her person, but has been replaced by Attorney Brooks as guardian of her funds.[3]

- Frederick Williams is represented now by Attorney Marty McAfee, who was appointed his guardian ad litem by the District Court on May 20, 2008 [D.E. 26]. Williams is the father of Mackenzie Williams.  According to Attorney McAfee, Williams also has a minor daughter (Alexandria Williams) and two adult sons out of wedlock.  There appears to be no pending order of support related to the minor, but Attorney McAfee cites Tennessee Code Annotated 36-5-901 which, in essence, provides the State of Tennessee with a lien against Williams' assets, including after-acquired funds, for child support obligations.  This Court expressed concerns over this asserted obligation, as well as any possible obligations to the other grown children. Attorney McAfee stated he would explore these issues with an attorney with more experience in these specific issues.

---

[2] At the August 17, 2010 hearing, the Attorneys informed the Court that Gerren Harrison and Mackenzie Williams each had received in the settlement of another lawsuit "about $62,000" from a settlement with various doctors who had treated Williams for psychiatric problems.

[3] Attorneys Krog and Brooks informed the Court that it had been necessary to remove Ms. Jones as guardian of Mackenzie Williams' funds, although she remains her legal guardian.

## THE PARTIES' SETTLEMENT PROPOSAL

Relevant only to the division of the insurance proceeds together with accrued interest, the parties have proposed the following:

> Frederick Williams, pursuant to 5 U.S.C. § 8705(b), would disclaim two-thirds (2/3) of the net amount of the interplead funds and interest (deducting the clerk's fee of the accrued interest). The Clerk will issue a check for two-thirds (2/3) of the total fund payable to Randell K. Brooks and Gregory C. Krog, Jr. in trust for Mackenzie Williams and Gerren Harrison, with that fund, after payment of attorney's fees and costs, to be divided evenly between Gerren Harrison and a Uniform Trust for Minors Trust for Mackenzie Williams. The Clerk will issue a check for the remaining one-third (1/3) of the net interpleaded funds and interest to Marty McAfee as trustee for Alexandria Williams, the minor child of Frederick Williams who is owed unpaid child support, such support constituting a priority under Tenn. Code Ann. § 36-5-901 (2010) over all other claims that could legally be asserted against any property that might come into Mr. Williams' possession. Defendants Gerren Harrison and Mackenzie Williams will pay their own Attorney's fees and costs from the settlement proceeds, in accordance with their separate contract with their counsel. Mr. McAfee will be paid a fee of $200 an hour for his time as separately approved by the Court, the other parties having no interest in the amount of this fee.

In effect, the parties representatives state, the insurance proceeds and accrued interest in the amount of $298,378.27 plus additional accrued interest is divided three ways among Decedent's two children and Frederick Williams. There are additional terms and conditions of the proposed agreement, and these relate to confidentiality and privilege, releases, dismissal of the case and other customary provisions of a contract of this nature.

ISSUES

The District Court is being called upon to consider for approval a settlement agreement negotiated among three attorneys representing three individuals who are or have been legally incompetent during the course of this lengthy matter.  Inherent in the preparation of the Report and Recommendation is the duty to inform the District Court of appropriate matters for consideration in closely scrutinizing the terms of this proposed settlement agreement.   "Fairness of the settlement must be determined by the trial court in every case…since they are unable to care for themselves, [minors] deserve the court's protection. *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988).

Timing of the Settlement

Fourteen months after the institution of this lawsuit, the District Court ordered mediation [D.E. 43].  However, all three attorneys jointly opposed this and requested that the Court vacate the order [D.E. 48], to which the District Court agreed [D.E. 50].  The attorneys had asserted that "this matter is purely a matter of law, suitable for resolution by cross-motions for summary judgment" and also, they felt it unethical and that it would breach their "heightened" fiduciary duties as attorneys in the roles of guardian ad litem.  As to the cross-motions for summary judgment, four separate joint motions asking for extensions were granted during this last year. Ultimately, however, no summary judgment motions were ever filed.  Attorneys now believe it is in the best interests of their clients to reach a settlement, following research which revealed a lack of clarity in the law regarding the issue of whether a husband, having been acquitted of the murder of his wife by virtue of insanity, is entitled to the proceeds of her life insurance.  The ethics concerns of counsel proved to be a nonissue as

counsel and this Court now agree that a resolution by settlement with District Court approval would be appropriate.

It seems to the Court that the key source of the delay, the legal question involving Williams' insanity, could have been tested sooner and thus efforts to settle made sooner. The net result of this delay was, of course, additional time spent and thus additional legal expenses incurred. The additional costs associated with this extended time included negotiations and multiple filings for additional time to file dispositive motions in late 2009 and early 2010. While reflecting that this extended amount of time passed from the time MetLife filed its interpleader action on March 4, 2008, the Court does not find that the time delay has prejudiced Defendants significantly, particularly since the money was invested during this time, though of course, the parties did not have access to it.

<u>Attorneys' Fees</u>

"When a court is called upon to approve the settlement as is in the best interest of the minor, it must consider and then determine what constitutes fair and reasonable compensation to the attorney, regardless of any agreement specifying an amount whether contingent or otherwise." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988). Insofar as attorneys' fees in the case at hand, Mr. Krog indicates he has contracts to represent Gerren Harrison and Mackenzie Williams and presented to the Court duplicate copies of these, one signed by Herman Harrison and one by Gerren Harrison. The third signature line for Gwendolyn Jones is unsigned. Mr. Krog's itemized statement of charges reflects 66.2 hours at the rate of $200 per hour for a total bill of $13,240, with no claim for expenses. Mr. Krog's

bill begins in late April 2008 after filing of the MetLife interpleader lawsuit and carries forward to this point.

According to Mr. Brooks, he presents an incomplete record of time which totals 5.6 hours, billed also at $200 per hour in his co-representation of Gerren Harrison and Mackenzie Williams.  At $200 per hour this totals $1,120.  Notwithstanding this, his note accompanying his bill reads, "[t]his figure is not a complete record of the time and attention put into this matter.  Both Gwendolyn Jones and Gerren Harrison, with the agreement of his father, Herman Harrison, met with both Greg Krog and myself, on June 19, 2010, regarding the attorneys fees in this case.  These fees were based, in part, on the settlement reached by all attorneys in this matter and the fact that if this case did not settle, there was a possibility that none of the children would receive anything, with all proceeds going to Frederick Williams.  The State of Tennessee would then have obtained a lien against said proceeds for Frederick Williams care." Attorneys Krog and Brooks informed the Court that their clients had agreed to a $5,000 fee for Mr. Brooks.

Mr. McAfee was appointed as guardian ad litem for Williams and has submitted an itemized statement of 66 total hours, also at $200 per hour for a total bill of $13,200 and no expenses.

The Magistrate Judge recommends a finding that Mr. McAfee's fees are reasonable, as are Mr. Krog's.  With regard to Mr. Brooks' fees, $1,120, the amount he has documentation on, is reasonable.  The Magistrate Judge understands that the clients have agreed to pay him $5,000 for his time, however, his failure to document his time, when he certainly knew or should have known that he would be seeking compensation for this time, is troubling.

Keeping accurate records is part of the responsibility of an attorney seeking payment for fees, and is especially the case where minors are concerned.  The Magistrate Judge recommends that the Court not approve any fees that Mr. Brooks cannot submit documentation for.

Distribution of Frederick Williams' Share of Proceeds

At the August 17, 2010 hearing, Mr. McAfee proposed that he, as guardian ad litem for Williams, pay Williams' one-third (1/3) share of this settlement into a trust, to be established for Alexandria Williams as "owed unpaid child support."  Mr. McAfee would serve as trustee for this trust.  Alexandria Williams is the aforementioned minor daughter of Williams from another relationship.

The Court requested that Mr. McAfee provide prior to the hearing, among other information, a copy of the trust documents for Alexandria Williams and proof of Defendant Williams' obligation to provide this child support.  Mr. McAfee indicated there was no trust for her at this point, but that one would be established and he would serve as Trustee.  As proof of Williams' obligation to pay child support, Mr. McAfee cited only Tenn. Code Ann. §36-5-901 and its priority allowed over all other claims that legally could be asserted against any property that might come into Williams' possession.  However, this Court has no evidence of paternity or an order requiring this support from Williams. This statute concerns "any case of child…support enforced by the department of human services…under Title IV-D of the Social Security Act in which overdue support…"  There is no evidence before the Court that Williams has any such obligation or even that Alexandria Williams has received or is entitled to receive funds from Title IV-D of the Social Security Act.  Additionally, it

appears from the arguments of counsel that Alexandria Williams resides in the Louisiana which further has an impact on the applicability of this Tennessee law.

Mr. McAfee expressed that he understood he was standing in the shoes of Williams, and he was not comfortable thinking that Williams would gain financially in this situation, so the trust arrangement for Alexandria was his solution to settling the case in an equitable manner.

The Magistrate Judge understands the complexity of the such an issue, but the parties have failed to demonstrate how Williams' guardian ad litem can legally settle this case designating Williams' share of the settlement to Alexandria Williams, without establishing that Williams actually owes child support for her care and without regard to other possible creditors or lienholders.  Indeed, there is a possibility that other children could come forward with a claim for funds, so the designation to Alexandria, without even concrete proof of any monetary obligation owed to her, seems arbitrary and inappropriate

The Magistrate Judge recommends that the settlement proposal as written not be adopted.  Rather, the parties' settlement should be 1/3 to Williams and 1/3 each to Gerren Harrison and Mackenzie Williams.  From that point, creditors and lienholders, including Alexandria Williams' guardian, can come forward to assert any rights they have over Williams' share of the settlement.

## Pro Bono Funds

On April 1, 2009, this Court granted Defendants Gerren Harrison and Mackenzie Williams, as minors, (1) leave to proceed *in forma pauperis*, (2) the appointment of Attorneys Krog and Brooks as guardians ad litem and (3) payment of their guardian ad litem and

attorney fees from the Court's pro bono fund.  In support of their underlying motion for this relief were affidavits from their parent or guardian indicating each had only the monthly funds from Social Security (Gerren Harrison received $1124 and Mackenzie Williams received $1224) which were expended monthly in their upkeep.

The Plan for Appointment Of Counsel For Pro Se Indigent Parties In Civil Cases Of The United States District Court For The Western District Of Tennessee governs the administration of pro bono funds and requires reimbursement to this Pro Bono Expense Fund. Given the recovery by settlement here, the District Court should order all such monies paid out from the Fund to be reimbursed to the Fund.

<u>CONCLUSION</u>

In sum, the Magistrate Judge does find that settlement in this case is appropriate; however, as written, the settlement proposal is problematic and should not be adopted by the Court.

Respectfully submitted,

**s/Edward G. Bryant**
EDWARD G. BRYANT
UNITED STATES MAGISTRATE JUDGE

Date:  **September 7, 2010**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**